109 Cal.Rptr.2d 123 (2001)
90 Cal.App.4th 766
In re JAMIE R. et al., Persons Coming Under the Juvenile Court Law.
Santa Barbara County Child Protective Services, Plaintiff and Respondent,
v.
Robyn R., Defendant and Appellant.
No. B144451.
Court of Appeal, Second District, Division Six.
June 19, 2001.
*124 Linda L.R. Johnson, under appointment by the Court of Appeal, for Appellant.
Stephen Shane Stark, County Counsel, County of Santa Barbara and Gustavo E. Lavayen, Deputy County Counsel, for Respondent.
YEGAN, Acting P.J.
Robyn R. appeals from an order terminating her parental rights (Welf. & Inst. *125 Code, § 366.26., subd. (b)(1))[1] and an order denying a section 388 petition to return her children. The trial court found that the children were adoptable and that adoption was the least detrimental placement alternative. (§ 366.26, subd. (c)(1).) We affirm.

Facts and Procedural History
On October 17, 1997, Santa Barbara County Child Protective Services (CPS) filed petitions on behalf of Jamie R. (born in 1990), Dylan R. (born in 1994), and Marke R. (born in 1995), alleging that appellant had neglected the children and was not providing for their care. (§ 300, subds.(b) & (g).) Appellant had a long history of drug abuse and had been arrested several times for possession of methamphetamine and testing positive for drugs. The petitions alleged that CPS "has repeatedly tried to work with the mother for over a year and a half. The mother has been offered services, including $27,451.51 towards full time child care, to help her regain custody of the child[ren]."
The trial court sustained the petitions and placed the children in foster care. Appellant was provided reunification services. On November 4, 1998, the children were returned to appellant's custody subject to the condition that appellant comply with the family maintenance case plan.
CPS detained the children a second time following appellant's December 18, 1998 arrest on a felony warrant. A supplemental petition was filed alleging that appellant had neglected the children and exposed them to violent drug offenders. (§ 387.) Appellant admitted the allegations. The children were placed in foster care and returned to appellant April 28, 1999.
CPS detained the children a third time on September 10, 1999, after appellant admitted using drugs, was arrested, and tested positive for amphetamine use. A new supplemental petition was filed alleging drug abuse, violation of the family maintenance case plan, and failure to adequately feed the children. Appellant admitted the allegations.
On November 10, 1999, at the combined disposition hearing and 18-month review hearing, the children were removed from appellant's custody. The trial court terminated family reunification services and referred the matter for a section 366.26 placement hearing.
On March 8, 2000, the trial court ordered CPS to find an adoptive home for the children and continued the matter to August 30, 2000. CPS placed the children in a foster/adoptive home on June 7, 2000.
Appellant filed a section 388 petition requesting that the children be returned to her custody. CPS recommended that the children not be removed from the foster/adoptive home. The case worker reported that appellant "has failed over and over again to provide adequate care and supervision for her children. [¶] The children have been returned to [appellant] on two occasions and then removed from her care due to numerous issues including ongoing substance abuse, incarceration, poor parenting skills and an inability to provide a safe and adequate home for her children. The children have incurred great emotional trauma as a result of being removed from their mother, and then returned to her to a marginal situation where their needs were not met, only to be removed again. All three children have acted out aggressively; the boys[`] behavior has included tantrums, emotional outbursts and defiance. Jamie [R.] has demonstrated inappropriate *126 sexualized behavior, defiance and running away. All three children have expressed anger toward their mother for her continual neglect of them and refusal to put their needs above her own."
The children's therapist, Judith Nishimori, reported that the children were doing well in the foster/adoptive home. Dylan and Marke told the therapist that they wanted to live with the foster parents. Jamie said that her first preference would be to live with her previous foster mother.
Evidence was also received that appellant refused to submit to a hair follicle drug test on August 3, 2000. The test would have revealed drug usage in the last 90 days. Appellant offered to take a urine test which was refused because she had a history of adulterating urine samples. Although appellant paid for a urine test, the case worker was skeptical of the test results and believed that appellant was using drugs. Appellant had lost a large amount of weight over a short period of time and claimed that she was disabled. When asked about the injury, appellant said that she was taking pain medication and that "when you're in recovery, especially in the early stages of recovery as I am ..., you have a tendency to cross addict to other things, food, other drugs, anything."
At the outset of the section 388 hearing, appellant's counsel told the trial court that there was a stipulation and that the trial court could interview the children outside the presence of counsel. The trial court spoke to the children and then summarized their testimony. It found that the children had a "definite bond" with the prospective adoptive parents and denied the section 388 petition. The trial court terminated appellant's parental rights based on clear and convincing evidence that the children were likely to be adopted. (§ 366.26, subd. (c)(1).)

In Camera Hearing
Appellant contends that the in camera interview of the children violated her due process rights. At the hearing on the section 388 petition, counsel for appellant stated: "[A]ll counsel have agreed and will stipulate that your honor may privately interview the children in chambers without counsel being present, and subject to that agreement th[at] neither side would call the children as witnesses at this hearing."
Citing In re Laura H. (1992) 8 Cal.App.4th 1689, 11 Cal.Rptr.2d 285, appellant contends that the stipulation was invalid because she did not personally waive her right of representation and confrontation. In In re Laura H., the trial court interviewed the minor outside the presence of counsel and the parties. The parent's attorney did not object. The Court of Appeal held that "section 366.26, subdivision ([h]) reflects a legislative intent that courts consider, when possible, a minor's wishes before ruling in a termination proceeding. When that expression takes the form of in camera testimony, however, a parent is entitled to the presence of counsel at the in camera proceeding." (Id., at p. 1697, 11 Cal.Rptr.2d 285.) The court stated that the parent's right to have counsel present at the in camera hearing "required a personal waiver in order to be bypassed." (Id., at p. 1695, fn. 8, 11 Cal.Rptr 2d 285.)
In In re Meranda P. (1997) 56 Cal. App.4th 1143, 65 Cal.Rptr.2d 913, the Court of Appeal declined to follow In re Laura H., supra, and held that a parent, by acquiescence, may waive his/her right to counsel. The court reasoned that "a dependency proceeding is civil, not criminal, in nature. Thus, a parent in a dependency is not `entitled to full confrontation and cross-examination....' [Citation.] ... The objective of a civil proceeding to *127 terminate parental rights is not to `prosecute and punish the indigent parent but to protect the child.' [Citation.]" (In re Meranda P., supra, 56 Cal.App.4th at p. 1157, fn. 9, 65 Cal.Rptr.2d 913.)
We adopt the same reasoning and conclude that appellant, by her silence and acquiescence, waived her statutory right to have counsel at the in camera hearing. (Id., at pp. 1155-1158, 65 Cal.Rptr.2d 913; In re Ebony W. (1996) 47 Cal.App.4th 1643, 1646-1648, 55 Cal.Rptr.2d 337 [right to counsel waived where parent did not request counsel].) Appellant, through her attorney, invited the trial court to interview the children alone in chambers. Counsel stated: "We just felt it would be appropriate that they not be cross-examined or subject to that on the stand in this hearing." The stipulation was made in open court, in appellant's presence. It is presumed that counsel acted with appellant's authority. (E.g., NORCAL Mutual Ins. Co. v. Newton (2000) 84 Cal.App.4th 64, 78-79, 100 Cal.Rptr.2d 683.) "Once a waiver has occurred, as here, it is unimportant whether the right to counsel is merely statutory (§ 317) or is a right of constitutional significance, as argued by appellant." (In re Gilberto M. (1992) 6 Cal.App.4th 1194, 1200, 8 Cal.Rptr.2d 285.)
In re Laura H. is inapposite because appellant invited the trial court to interview the children in camera to spare them the stress of testifying in open court. After the trial court spoke to the children, appellant did not challenge the children's testimony or request a readback of their testimony. (§ 366.26, subd. (h).)[2] The present case is in stark contrast to In re Laura H., where the parent claimed that the "minor was an accomplished liar and ... minor's testimony would have been different had she been present and able to look the minor in the eye." (In re Laura H., supm, 8 Cal.App.4th at p. 1693, 11 Cal.Rptr.2d 285.)
Although appellant had the statutory right to have counsel attend the in camera hearing, appellant initiated this procedure through her counsel. Assuming there was some error, the doctrine of invited error applies where a party, for tactical reasons, persuades the trial court to follow a particular procedure. The party is estopped from claiming that the procedure was unlawful. (E.g., People v. Barton (1995) 12 Cal.4th 186, 198, 47 Cal.Rptr.2d 569, 906 P.2d 531 [trial court requested not to instruct on lesser included offense]; People v. Hardy (1992) 2 Cal.4th 86, 184, 5 Cal.Rptr.2d 796, 825 P.2d 781 [same].)
Assuming, arguendo, that the trial court erred in not obtaining a waiver from appellant, the error was harmless beyond a reasonable doubt. We have reviewed the transcript of the children's testimony and conclude that counsel's presence at the in camera hearing would not have resulted in a more favorable result. "With respect to a parent's assertion of a violation of the constitutional right to counsel, the parent must also show there was a `determinative difference' in the outcome of the proceeding by reason of the parent's lack of counsel, such that the proceeding was rendered fundamentally unfair to the parent. [Citations.]" (In re Meranda P., supra, 56 Cal.App.4th at p. 1153, 65 Cal. *128 Rptr.2d 913.) Appellant has made no such showing.

Termination of Parental Rights
Appellant contends that the trial court erred in finding that the children would not benefit from continuing the parent-child relationship. (§ 366.26, subd. (c)(1)(A).) The argument is without merit.
Where the trial court finds that the child is likely to be adopted, it must select adoption as the permanent plan unless it finds that termination of parental rights would be detrimental under one of four specified exceptions. (In re Derek W. (1999) 73 Cal.App.4th 823, 826, 86 Cal. Rptr.2d 739.) One statutory exception is that the "parents ... have maintained regular visitation with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(A).) The parent has the burden of showing that continuation of the parent-child relationship will promote "the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents.... If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (In re Autumn H. (1994) 27 Cal.App.4th 567, 575, 32 Cal.Rptr.2d 535.)
Here the benefits of a permanent, adoptive home outweighed any detriment the children might suffer if parental rights were terminated. (E.g., In re Zachary G. (1999) 77 Cal.App.4th 799, 811-812, 92 Cal. Rptr.2d 20; In re Casey D. (1999) 70 Cal.App.4th 38, 51-53, 82 Cal.Rptr.2d 426.) Although appellant visited the children at least three times between March 8, 2000 and August 30, 2000, these were not positive or nurturing visits. The case worker reported that the children were "consumed with guilt, for being happy where they are and desiring to be part of the adoptive family." The report stated that "Jamie continues to ask for visits with her mother. Dylan and Markie do not.... Jamie expresses conflictual feelings about her mother. On the one hand, she wants to live with her mother and to believe that her mother can take care of her. On the other hand, she no longer trusts her mother[`]s promises of a good life, and deep down knows that she is much better off where she is now."
Jamie's therapist, Judith Nishimori, voiced similar concerns and stated that "Jamie's perception of life with mother is taking care of mother and not mother taking care of Jamie.... [¶] ... [¶] Jamie will do whatever is necessary to help her mother, even at her own expense. I believe the best placement for the children is one where they will have consistent people in their lives, a stable home life and parents would will set appropriate boundaries, rules and structure for them."
The trial court found that the benefits of a permanent, stable home with the prospective adoptive parents outweighed any detriment the children would suffer if appellant's parental rights were terminated. On review, we may not reweigh the evidence and substitute our judgment for that of the trial court. (In re Casey D., supra, 70 Cal.App.4th at p. 53, 82 Cal.Rptr.2d 426.) Adoption is the preferred placement because it offers the prospect of a secure permanent home. (Cynthia D. v. Superior Court (1993) 5 Cal.4th 242, 258, 19 Cal.Rptr.2d 698, 851 P.2d 1307; In re Brian R. (1991) 2 Cal. App.4th 904, 924, 3 Cal.Rptr.2d 768 [cordial father-son visits insufficient to mandate a permanent plan other than adoption].)
*129 Appellant's argument that adoption is not in the "best interests" of the children is without merit. There is no "best interests" exception to the termination of parental rights. (In re Tabatha G. (1996) 45 Cal.App.4th 1159, 1165, fn. 2, 53 Cal.Rptr.2d 93.) While the relationship between appellant and the children is pleasant and emotionally significant to appellant, it bears no resemblance to the daily nurturing that marks a strong parent-child relationship. The trial court did not err in terminating parental rights and placing the children for adoption. "As in almost every dependency case involving substance abuse, appellant waited far too long to take the necessary steps towards recovery." (In re Brittany C. (1999) 76 Cal.App.4th 847, 854, 90 Cal.Rptr.2d 737.)
The judgment is affirmed.
COFFEE, J., and PERREN, J., concur.
NOTES
[1] All statutory references are to the Welfare and Institutions Code.
[2] Section 366.26, subdivision (h) states in pertinent part: "The testimony of the child may be taken in chambers and outside the presence of the child's parent ... if the child's parent or parents are represented by counsel, [and] the counsel is present.... [¶] ... [¶] After testimony in chambers, the parent or parents of the child may elect to have the court reporter read back the testimony or have the testimony summarized by counsel for the parent or parents."