Filed 8/12/14  In re Adrian D. CA2/5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re ADRIAN D., a Person Coming Under the Juvenile Court Law. | B250403<br>(Los Angeles County Super. Ct. No. CK097517) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>HUGO G.,<br><br>    Defendant and Appellant. | |

APPEAL from the orders of the Superior Court of Los Angeles County, Tony L. Richardson, Judge.  Affirmed.

Kimberly A. Knill, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, and Jacklyn K. Louie, Principle Deputy County Counsel, for Plaintiff and Appellant.

_____

Hugo G. (father)[1] appeals from the dependency court's disposition orders. Father contends the court erroneously made a detriment finding when father neither had nor requested custody or placement of his son, Adrian D. He also contends the court's orders for monitored visitation, domestic violence classes, and anger management classes are not supported by substantial evidence. The Department of Children and Family Services (Department) cross-appeals, contending the court erred when it struck allegations under Welfare and Institutions Code section 300, subdivisions (a) and (b)[2] relating to domestic violence between father and Angel R. (mother).[3] We affirm each of the court's orders.

## STATEMENT OF FACTS AND PROCEDURE

Mother and father first met when mother was 16 and father was 19, and they became involved about three years later. Father was on parole for gun possession when he was charged with attempted murder. He was held in custody for two years until he was acquitted. Adrian was a year old when father was released. After father's release, mother and father intermittently lived with father's parents in Los Angeles, and then in Chicago for about six months when Adrian was two years old.

Various incidents of domestic violence took place between mother and father during the time they lived together in Los Angeles and Chicago, but Adrian was not present during any of the incidents. Mother reported that she called the police after father "backhanded" her, but there were no charges because she had not suffered any injuries. He also pulled her by the hair in Chicago. Adrian's maternal aunt reported that father

[1] The court granted father presumed father status at the adjudication hearing. He is presumed father to Adrian D. only, and does not have any relationship to the two other minors involved in this case.

[2] All further statutory references are to the Welfare and Institutions Code, unless otherwise indicated.

[3] Mother does not appeal the court's orders.

was physically abusive towards mother. He would choke mother and once he shot at her, but hit someone else instead. Mother had to testify at father's trial. Father described mother as difficult and promiscuous and said mother had on different occasions stabbed him with a pair of scissors, kicked him in the groin, threatened him with a knife, and destroyed his brother's truck with an axe. Adrian's paternal grandfather reported that mother and father fought daily when they were living with him in Los Angeles, and that mother "acted like a crazy woman so I kicked her out." Father claimed mother endangered Adrian by allowing him to walk on the street to get to father. Father called in a referral to the Department, but the referral was deemed unfounded.

Both father and mother used marijuana and methamphetamines. Father last used drugs in 2009, and he believed mother stopped using drugs after having Adrian, but is not sure because he was incarcerated.

Mother eventually left father in Chicago when Adrian was two years old and returned to Los Angeles, where she married Aldo C. in 2008. Mother and Aldo had two younger sons[4] together. Adrian called Aldo "dad" and lived with Aldo, mother, and two younger half-brothers. In November 2012, father began sending mother threatening and harassing text messages, most recently on January 11, 2013. Father also appeared at mother and Aldo's house in December 2012, unannounced and making gang signs.

Mother and Aldo fought often because mother worked and Aldo would go out with his friends. In January 2013, mother called the Women and Children's Crisis Center, claiming that Aldo hit her and asking for a domestic violence shelter. Mother and Aldo engaged in an altercation that resulted in mother being arrested by police. The Department was notified and detained all three children based on the risk created by the domestic violence between mother and Aldo. Adrian was placed with his maternal aunt. Mother identified father as Adrian's father, but she did not know his whereabouts.

At the detention hearing, the court ordered all three minors detained, gave the

---

[4] The two younger sons were named in the petition, and the court sustained petition allegations relating to domestic violence between mother and Aldo C., but because father has no relationship to them, they are not involved in this appeal.

Department discretion to place them with relatives, and directed the Department to conduct a search for father.

On February 28, 2013, the Department filed an amended petition, adding two counts relating to father and mother. The petition alleged that domestic violence between mother and father placed Adrian at risk of harm. Mother filed a request for a temporary restraining order on the same day, citing harassing text messages from father and a menacing look he gave her in the courtroom. The court denied mother's request for a restraining order, but ordered father to remain away from mother. It also appointed counsel to represent father in the dependency proceeding and continued the adjudication hearing to a later date. Before the adjudication hearing, the Department reported that father agreed to submit to a Live Scan criminal background check and agreed to take a drug test, but did not do either.

The court conducted an adjudication hearing on May 10, 2013, and 13, 2013, admitting the Department's reports as evidence and hearing the arguments of counsel. Counsel for mother, father, and Adrian argued the facts presented in the Department's report as to domestic violence between mother and father did not support a finding of current risk sufficient to sustain the allegations because the incidents alleged were too remote in time. The court sustained allegations under subdivision (b) relating to domestic violence between mother and Aldo. It dismissed the allegations relating to domestic violence between father and mother, finding they were "not sustained by the facts presented today and as being far too remote to rise to the level of present or future substantial risk to the children involved especially given that it appears to the court that the statements are uncorroborated[.]"

Because father was only an alleged father, the Department's February 28, 2013 report recommended the court deny father reunification services under subdivision (a) of section 361.5. If the court were to offer reunification services, the Department recommended individual counseling, a parent education course, a substance abuse treatment program, ongoing random drug and alcohol testing, domestic violence counseling, and an anger management program.

4

At the disposition hearing on May 13, 2013, the parties stipulated that if called as a witness, Adrian would testify that he firmly identified having two fathers, Aldo and father, and he wanted a relationship with both. There had been visits between Adrian and father, and Adrian wanted the visits to continue. The court found father to be the presumed father of Adrian.

Father acknowledged that he was not a custodial parent and that he was not seeking to have Adrian placed with him. Father's counsel stated "I believe that the finding would be that there's detriment to return to the father because his relationship is not strong enough at this point in time, and I will submit on that." The court made a detriment finding as to father, and explained that it based its finding on the fact that although the allegations regarding violence between mother and father "seemed to be fairly remote, those claims were very serious. They involved matters involving knives and scissors and stabbing and so forth." The court based its detriment finding on those earlier incidents, along with reports of more recent incidents, including "the waving of a gun and making threats directly to mother."

Father asked the court to order unmonitored visitation and to give the Department discretion to further liberalize visits. He also argued that as a non-offending parent, he should not be ordered to participate in reunification services. The Department argued that monitored visits were warranted, given father's criminal history and his failure to cooperate with the Department despite agreeing to submit to drug testing and a criminal background check. The court ordered monitored visits three times a week for three hours per visit, and directed father to participate in domestic violence counseling and anger management.

On June 11, 2013, father appealed the disposition orders. The Department filed its cross-appeal, appealing the court's jurisdictional findings on August 8, 2013.

## DISCUSSION

### Standard of Review

"On appeal, the 'substantial evidence' test is the appropriate standard of review for both the jurisdictional and dispositional findings. [Citations.]" (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1433.)  We must uphold the jurisdictional findings if, "after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we determine there is substantial evidence to support the findings.  [Citation.]"  (*In re Monique T.* (1992) 2 Cal.App.4th 1372, 1378.)  An order dismissing petition allegations is also reviewed for substantial evidence.  (*In re Sheila B.* (1993) 19 Cal.App.4th 187, 200 (*Sheila B.*) [affirming dismissal of petition where record did not contain "indisputable evidence of abuse"].)  We review for substantial evidence the findings of fact on which dispositional orders are based.  (*In re Jasmin C.* (2003) 106 Cal.App.4th 177, 180 (*Jasmin C.*).)  Under the substantial evidence standard of review, the appellant bears the burden to show there is no substantial evidence to support the finding or order being appealed from.  (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.)

We recognize that "[t]he juvenile court has broad discretion to determine what would best serve and protect the child's interest and to fashion a dispositional order in accordance with this discretion.  [Citations.]  The court's determination in this regard will not be reversed absent a clear abuse of discretion.  [Citation.]"  *In re Jose M.* (1988) 206 Cal.App.3d 1098, 1103-1104.)

### Jurisdictional Findings

The Department contends on cross-appeal that the petition allegations relating to domestic violence between mother and father are supported by substantial evidence and the court erred when it dismissed those allegations.  The petition alleged that mother and

6

father "have a history of engaging in violent altercations in the presence of the child. On prior occasions, [mother] attempted to stab [father] with a knife and scissors. On prior occasions, [father] 'backhanded' [mother] and . . . [father] endangers [Adrian's] physical health and safety and places the child at risk of physical harm, damage and danger." The court dismissed the allegations under subdivisions (a) and (b), finding they were "not sustained by the facts presented today and as being far too remote to rise to the level of present or future substantial risk to the children involved especially given that it appears to the court that the statements are uncorroborated[.]"

A court may exercise dependency jurisdiction under subdivision (a) of section 300 when there is a substantial risk of "serious physical harm inflicted nonaccidentally upon the child by the child's parent or guardian." (§ 300, subd. (a); see *In re Giovanni F.* (2010) 184 Cal.App.4th 594, 599-600 (*Giovanni F.*) [affirming jurisdictional finding under section 300, subdivision (a), when child is exposed to parents' domestic violence].) Subdivision (b) of section 300 supports dependency court jurisdiction if a child has suffered, or there is a substantial risk the child will suffer, serious physical harm or illness as a result of the parent's failure to adequately supervise or protect the child. "Physical violence between a child's parents may support the exercise of jurisdiction under subdivision (b) but only if there is evidence that the violence is ongoing or likely to continue and that it directly harmed the child physically or placed the child at risk of physical harm. [Citations.]" (*In re Daisy H.* (2011) 192 Cal.App.4th 713, 717 (*Daisy H.*).) Courts have exercised jurisdiction under subdivisions (a) or (b) of section 300 based on a history of domestic violence where the evidence demonstrates a substantial risk of harm to the children involved. (See, e.g., *In re R.C.* (2012) 210 Cal.App.4th 930, 941 [children are at risk of harm based on exposure to parents' domestic violence]; *Giovanni F., supra,* 184 Cal.App.4th at p. 598.) In contrast, where instances of domestic violence took place years earlier and not in a minor's presence, it was error to exercise jurisdiction. (*Daisy H., supra,* 192 Cal.App.4th at p. 716.)

The Department argues that the history of domestic violence between mother and father was sufficient to support a finding of substantial risk. But the domestic violence

identified in the petition took place more than four years ago, when Adrian (now seven) was a toddler. Adrian was not present during any of the incidents. Since the alleged incidents, mother and father have separated, and mother is living with Aldo with whom she has had two younger children. Father has not seen Adrian for over a year. There was evidence of father sending threatening text messages recently, but based on the record before us, we cannot say that there was such "indisputable evidence" of risk as to compel a finding of jurisdiction. (*Sheila B., supra*, 19 Cal.App.4th at p. 200.) Therefore, we affirm the court's order dismissing the allegations about domestic violence between mother and father.

## Detriment Finding and Removal Order

Seeking reversal of the court's detriment finding, father contends the court erred in finding detriment under section 361, subdivision (c)(1), because father was a non-custodial parent. Father further contends that because he was not seeking placement under section 361.2, subdivision (a), any detriment finding was gratuitous and unnecessary. Finally, father argues that any detriment finding is unsupported by substantial evidence.

Section 361, subdivision (c)(1), authorizes a child's removal from the physical custody of his parents upon a finding of detriment, specifically by clear and convincing evidence that there is substantial danger to the physical health, safety, protection, or emotional well being of the child or would be if the child were returned home, and there are no reasonable means to protect the child without removal from the parent's physical custody. Section 361.2, subdivision (a), authorizes a court to place a child with a non-custodial parent who requests placement, "unless it finds that placement with that parent would be detrimental to the safety, protection, or physical or emotional well being of the child."

Each of father's arguments ignores the fact that his own attorney *invited* the court to make a detriment finding, stating "I believe that the finding would be that there's

8

detriment to return to the father because his relationship is not strong enough at this point in time, and I will submit on that." Later, when the court addressed reunification services, father's counsel asked, "The court is finding detriment to return to [] father at this time?" The court responded, "Yes. Thanks for pointing that out because I did want to make a note as to why the court is so finding" and explained it dismissed petition allegations "not because the court doesn't accept that they occur [sic], but because they seemed to be fairly remote, those claims were very serious. They involved matters involving knives and scissors and stabbing and so forth." The court based its detriment finding on those earlier incidents, along with reports of more recent incidents, including "the waving of a gun and making threats directly to mother."

We need not consider father's arguments, because during the disposition hearing, father did not object to the court's detriment finding, and in fact prompted the court to make such a finding. He is therefore estopped from claiming that the court erred in making the finding. Where a party persuades the court to follow a particular path, that party is estopped from later claiming the court erred in doing so. (*In re Jamie R.* (2001) 90 Cal.App.4th 766, 772.) Arguing that the dependency court committed error by acting as prompted by counsel "amounts to nothing more than an attempted sandbagging of the trial court." (*Steve J. v. Superior Court* (1995) 35 Cal.App.4th 798, 813.) After prompting the court to make a detriment finding, submitting on the issue, and remaining silent when the court stated the reasons for its detriment finding, father is estopped from claiming on appeal that the court erroneously made a detriment finding.

## Monitored Visits and Family Enhancement Services

Father contends there is insufficient evidence to support the court's disposition orders directing him to attend anger management and domestic violence classes and requiring his visits with Adrian to be monitored. He argues that because the court dismissed the petition allegations against him, he is a "non-offending" parent whose behavior did not lead the court to exercise dependency jurisdiction over Adrian, and any

9

order to take anger management or domestic violence classes is not "designed to eliminate the conditions that brought [Adrian] to the attention of the court." (*Jasmin C., supra,* 106 Cal.App.4th at p. 180, citing § 362, subd. (c).)  Father also claims that because he had never engaged in domestic violence in Adrian's presence or acted in a manner that posed a risk to Adrian, there was insufficient evidence to support an order for father's visits with Adrian to be monitored.

Absent a statutory exception, "whenever a child is removed from a parent's or guardian's custody, the juvenile court shall order the social worker to provide child welfare services to the child and the child's mother and statutorily presumed father or guardians." (§ 361.5, subd. (a).)  "The overarching goal of dependency proceedings is to safeguard the welfare of California's children.  [Citation.]  'Family preservation, with the attendant reunification plan and reunification services, is the first priority when child dependency proceedings are commenced.  [Citation.]  Reunification services implement "the law's strong preference for maintaining the family relationships if at all possible." [Citation.]'  [Citation.]  Reunification services are typically understood as a benefit provided to parents, because services enable them to demonstrate parental fitness and so regain custody of their dependent children.  [Citation.]"  (*In re Nolan W.* (2009) 45 Cal.4th 1217, 1228 (*Nolan W.*).)

"The Legislature has given juvenile courts broad discretion to fashion reunification orders designed to address the problems that have led to a dependency proceeding."  (*Nolan W., supra*, 45 Cal.4th at p. 1229.)  The orders must also be "reasonable" and "designed to eliminate those conditions that led to the court's finding that the child is a person described by Section 300." (§ 362, subd. (d).) "The reunification plan '"must be appropriate for each family and be based on the unique facts relating to that family."' [Citation.]" (*In re Christopher H.* (1996) 50 Cal.App.4th 1001, 1006.)

Father argues that because the court dismissed the petition allegations against him, the court cannot require him to attend anger management or domestic violence classes. Father relies on *Jasmin C., supra*, 106 Cal.App.4th 177, where the dependency court's order requiring a non-offending mother to attend parenting classes was reversed because

10

no substantial evidence supported the court's order. Father proposes a broad reading of the holding in *Jasmin C.*, arguing that whenever a parent is considered "non-offending," the dependency court is precluded from ordering reunification services for that parent. However, the facts of *Jasmin C.* are easily distinguished from the facts in this case, and we decline to apply *Jasmin C.* as broadly as father argues. In *Jasmin C.*, father assaulted his 18-year-old stepdaughter, breaking her nose. In the same isolated incident, he repeatedly hit and slapped mother's 15-year-old daughter and pushed a five-year-old niece. Mother acted to protect the children immediately, restraining and calming father, and directing someone to call the police. (*Id.* at p. 179.) The three children were released to mother, and father (who was incarcerated at the time) was ordered to remain outside the home. Over the objection of mother's counsel, the Department requested parenting classes for mother, and the court so ordered, without making any findings or giving any explanation. The reviewing court reversed, concluding that "no evidence, let alone substantial evidence," supported the court's order. (*Id.* at p. 180.)

Here, there is substantial evidence supporting the court's disposition orders, because mother and father have a history of domestic violence, and father's relationship with Adrian is not well established. As his attorney acknowledged, "his relationship is not strong enough at this point in time[.]" Father admits to a criminal history involving gun possession, and there was evidence he had recently sent threatening text messages to mother. In light of father's failure to submit to drug testing or a criminal background check, it is reasonable that the court would order services that would provide some level of protection to Adrian. The court stated that it was father's choice whether to avail himself of reunification services or not, but the court appropriately determined that some level of participation in services was necessary before it could consider permitting father unmonitored visitation with Adrian, and perhaps even the possibility of placement. Given the wide discretion given to courts in fashioning reunification orders, we cannot say the court abused its discretion by ordering monitored visits or requiring father to take domestic violence and anger management classes.

## DISPOSITION

The dependency court's orders dismissing petition allegations under subdivisions (a) and (b) of section 300 as they relate to domestic violence between mother and father are affirmed.  The court's disposition orders, finding detriment as to father, ordering monitored visitation between father and Adrian, and ordering domestic violence classes and anger management classes for father, are also affirmed.

KRIEGLER, J.

We concur:

TURNER, P. J.

MINK, J.[*]

---

[*] Retired judge of the Los Angeles County Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.