Filed 9/20/16  In re L.C. CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re L.C. et al., Persons Coming Under the Juvenile Court Law. | |
| FRESNO COUNTY DEPARTMENT OF SOCIAL SERVICES,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>REBECCA S.,<br><br>Defendant and Appellant. | F073315<br><br>(Super. Ct. Nos. 14CEJ300303-1, 14CEJ300303-2, 14CEJ300303-3)<br><br>**OPINION** |

### THE COURT[*]

APPEAL from a judgment of the Superior Court of Fresno County.  Mary Dolas, Judge.

Elizabeth C. Alexander, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel C. Cederborg, County Counsel, and Brent C. Woodward, Deputy County Counsel, for Plaintiff and Respondent.

-ooOoo-

---

[*]      Before Gomes, Acting P.J., Detjen, J. and Franson, J.

## INTRODUCTION

Appellant Rebecca S. (Mother) challenges the Welfare and Institutions Code[1] section 366.26 order terminating her parental rights and placing her minor children for adoption. She contends that a beneficial parent-child relationship existed and the juvenile court abused its discretion. We disagree and affirm.

## FACTUAL AND PROCEDURAL SUMMARY

On October 3, 2014, Mother's infant daughter M. was admitted to the hospital because of failure to thrive. On October 4, 2014, the police department placed a protective hold on M. pursuant to section 300. A decision was made to file a section 300 petition on behalf of Rebecca's three children, L., I., and M.

Fresno County Department of Social Services (department) records showed that there had been six prior referrals for possible physical abuse and neglect of the children. She previously had received voluntary family maintenance services in 2014. Services provided included emergency housing, transportation, parenting classes, public health nurse coaching, and referrals for public assistance.

Medical records showed that M. had not been gaining weight, in fact, she had dropped in her percentile, was now at .2 percent of the growth chart, and had been losing weight. L. had been physically abused by the children's father, Jacob M., who had a lengthy criminal history and was sentenced to 10 years' imprisonment after being convicted of physically injuring L.

Family members reported that mother was inattentive to the children; mother frequently had to be told to bathe or feed the children, and she was feeding M. improperly.

The juvenile court assumed jurisdiction on October 27, 2014, pursuant to section 300, subdivision (b). The disposition report recommended that Mother receive

---

[1] References to code sections are to the Welfare and Institutions Code.

reunification services and that no services be provided Father. A report that L. had been subjected to physical abuse and that the other children were at risk had been substantiated in October 2013. Several subsequent referrals alleging neglect were deemed unfounded or inconclusive. The referral for general neglect in October 2014 was substantiated.

Mother had no criminal record. Father had criminal convictions for carjacking and the infliction of injury on L. The conviction for physically injuring L. was in 2013 and father was sentenced to 10 years' imprisonment.

Mother had been receiving voluntary family maintenance services at the time the children were placed in protective custody. The department questioned whether Mother would be able to benefit from reunification services, in light of the fact that she had been receiving family services.

The disposition report noted that L. was not developmentally "on target." I. was found to be not on target developmentally; in addition, he had some physical abnormalities with his ears and legs. M. had the same ear deformity as I., and had been gaining weight and appeared developmentally on target after being placed in protective custody.

The department opined in the disposition report that the children would be at substantial risk if returned to the care of either of their parents. Mother had missed seven scheduled visits; and made inappropriate comments to L., making him cry. While in her custody, Mother had failed to provide adequate food and shelter, and did not meet the medical needs of the children. The department recommended out-of-home placement.

At the January 14, 2015 disposition hearing, the children were removed from Mother's custody. Reunification services were ordered provided to Mother, including parenting classes, domestic violence evaluation and services, substance abuse evaluation and treatment, and a psychological evaluation of Mother. Visitation was ordered to be supervised. Mother did not appeal from the jurisdictional findings or the dispositional order.

After removal, the children were all placed with a relative. The children "thrived" in the relative placement; the home met the medical, physical, social, emotional, and educational needs of the children. Further medical assessments had found M. had gastro-reflux disease and needed medication. She also was not developmentally on target. I. was found to be healthy with no significant issues. L. had physical problems that required anti-seizure medication; L. also needed an inhaler and had a speech impairment.

On November 4, 2015, reunification services for Mother were terminated. Mother filed a notice of intent to file writ petition. This court later dismissed the matter as abandoned, in case No. F072705.

A section 366.26 hearing was scheduled. At the time of the initial section 366.26 hearing on February 10, 2016, L. was four years old; I. was two years old; and M. was one year old.

The social study prepared for the permanent placement hearing noted that Mother had been provided with supervised visits with the children. Mother had initially missed many of the scheduled visits. On those visits she participated in, Mother often made inappropriate comments to L., leaving him crying. Mother also frequently was using her cell phone during visits, instead of interacting with her children. Mother "struggled" to maintain safety and structure for the children during visits.

The department referred Mother to an agency that could provide "therapeutic" supervised visitation, during which a licensed therapist could provide assistance to Mother during visitation to achieve goals that would improve her interaction with her children. Commencing in June 2015, visits were supervised by a therapist and Mother made "small progress." L., however, sometimes displayed increased negative behavior following a visit with Mother.

In the social study, the social worker noted that Mother had never progressed beyond supervised visits with her children. I. and M. had lived more than half their lives outside Mother's custody; L. had lived a significant portion of his life outside of

4.

Mother's custody. The social worker was of the opinion that any benefit from maintaining the parent-child relationship did not outweigh the benefits to the children of permanency and adoption. The children demonstrated "a high level of comfort" in their placement and "always appear to be safe, comfortable and well cared for in the prospective adoptive home."

At the continued, contested section 366.26 hearing on March 2, 2016, Dr. Timothy Cox, a clinical psychologist, testified. Cox supervised visits between Mother and the children from September 2015 until the section 366.26 hearing. Cox testified Mother fulfills a parental role, but he never completed a bonding study. Cox testified Mother had shown "significant progress" toward her goals. Cox also testified there was a "possibility that it could be detrimental exists" when asked about termination of Mother's parental rights.

The juvenile court noted that Mother had received 12 months of services and although she had made progress, she failed to advance beyond supervised visits and had to have a therapist present at visits. Based on the evidence, the juvenile court found that "visits evolved" to "more of a friendly relationship" and there was only a "very limited" parental role by Mother that did not give rise to a "strong beneficial relationship." The juvenile court concluded:

> "the fact remains that there has not been sufficient evidence to show such a strong, positive, emotional, or beneficial attachment as between these children and their parents to the point that terminating parental rights would be detrimental due to such a strong parent/relationship or sufficient evidence that the children would benefit from continuing the parent/child relationship."

The juvenile court terminated Mother's parental rights and set adoption as the preferred permanent plan. Mother filed a timely notice of appeal.

**DISCUSSION**

Mother contends the juvenile court abused its discretion in finding that termination of parental rights would not be detrimental to the children. Mother contends that she has maintained regular visitation and contact with the children and the children would benefit from continuing the relationship; therefore, pursuant to section 366.26, subdivision (c)(1)(B)(i), the juvenile court should not have terminated parental rights. We disagree.

We review a section 366.26 order for sufficiency of the evidence. (*In re L.Y.L.* (2002) 101 Cal.App.4th 942, 947.) An appellate court looks to see whether substantial evidence, contradicted or uncontradicted, supports the juvenile court's order. (*In re Heather A.* (1996) 52 Cal.App.4th 183, 193.) Substantial evidence is a difficult hurdle to overcome; if there is any substantial evidence we must affirm. (*D.M. v. Superior Court* (2009) 173 Cal.App.4th 1117, 1128.)

When a minor cannot be returned to a parent at the end of the reunification period, adoption is the preferred permanent plan. (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 573.) The juvenile court must select adoption as the permanent plan unless termination of parental rights would be detrimental. (*In re Jamie R.* (2001) 90 Cal.App.4th 766, 773.)

Mother's claim that a beneficial relationship existed between her and her children, as contemplated by section 366.26, subdivision (c)(1)(B)(i), is not supported by the evidence. Mother never progressed beyond supervised visits after one year of reunification services. A relationship established through supervised visits amounts to "little more than play dates" with a "loving adult." (*In re Bailey J.* (2010) 189 Cal.App.4th 1308, 1316-1317.) A parent must show "more than frequent and loving contact, an emotional bond with the child, or pleasant visits," to establish the beneficial relationship exception. (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 229.)

Here, M. and I. spent more than half their lives outside Mother's custody; L. spent a significant portion of his life not in Mother's custody. The relationship between

6.

Mother and her children, at the time of the section 366.26 hearing, had progressed to become pleasant visits. This simply is not enough to establish a beneficial relationship.

In determining whether a beneficial relationship exists such that it would be detrimental to the children to terminate parental rights, a juvenile court "balances the strength and quality of the parent-child relationship in a tenuous placement against the security and sense of belonging that a stable family would confer." (*In re Dakota H.*, *supra*, 132 Cal.App.4th at p. 229.) The children here were "thriving" in the placement of the prospective adoptive parents; the prospective adoptive parents were meeting all of the social, emotional, and other needs of the children; and the children were happy, healthy, and comfortable in the home. The juvenile court rightly concluded that maintaining a relationship with Mother that amounted to no more than pleasant visits, did not outweigh the benefits to the children of placement in a stable, loving home.

The social worker opined that whatever benefit would be conferred on the children from maintaining a relationship with mother did not outweigh the benefit of permanency and adoption. Cox testified merely that the "possibility" of detriment to the children existed from termination of parental rights; not that it was a "positive yes" or even a probability. A juvenile court is entitled to give great weight to a social worker's assessment and testimony. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 52-53.)

Maintaining parental contact will always confer some incidental benefit on a child; but frequent, pleasant visits, are not enough to establish the beneficial relationship exception. (*In re Dakota H.*, *supra*, 132 Cal.App.4th at p. 229.) The juvenile court found that maintaining contact with Mother simply did not outweigh the benefits to the three children of adoption and permanency.

The record discloses substantial evidence supports the juvenile court's order and the juvenile court did not abuse its discretion in finding that termination of parental rights would not be detrimental to the children.

## **DISPOSITION**

The order terminating parental rights is affirmed.