Filed 9/10/13  In re Kaitlyn S. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re KAITLYN S., a Person Coming Under the Juvenile Court Law. | B246932 (Los Angeles County Super. Ct. No. CK86460) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. LISA G., Defendant and Appellant. | **ORDER MODIFYING OPINION** **[No Change in Judgment]** |

THE COURT:


It is ordered that the opinion filed herein on September 3, 2013, be modified as follows:

Page 2, first sentence, second line, please replace "300" with "388" so that the sentence reads as follows:  Lisa G. (Mother) appeals from the dependency court's summary denial

of her Welfare and Institutions Code section 388 petition[1] and order terminating her parental rights.  [The footnote is unchanged.]

This modification does not effect a change in judgment.

Filed 9/3/13  In re Kaitlyn S. CA2/2 (unmodfied version)

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re KAITLYN S., a Person Coming Under the Juvenile Court Law. | B246932 (Los Angeles County Super. Ct. No. CK86460) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. LISA G., Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Amy M. Pellman, Judge.  Affirmed.

Christy C. Peterson, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel, Terry T. Truong, Deputy County Counsel, for Plaintiff and Respondent.

_____

Lisa G. (Mother) appeals from the dependency court's summary denial of her Welfare and Institutions Code section 300 petition[1] and order terminating her parental rights. Because we find that the court did not abuse its discretion in denying the petition and that substantial evidence supported the order terminating parental rights, we affirm.

## FACTS

Kaitlyn S. was born in June 2003. On February 8, 2011, the Department of Children and Family Services (DCFS) filed a section 300 petition alleging that Mother and Brian S., Kaitlyn's father (Father), had a history of domestic violence, that Mother abused methamphetamine and alcohol, and that father abused alcohol. Further, the petition alleged that in September 2010, Kaitlyn's home was found in an unsanitary and hazardous condition.

The detention report noted that the family was initially referred to DCFS in August 2010. The referral stated that the family's home had no electricity, gas, or food. Both parents drank alcohol daily and Mother used "speed." The parents often screamed at each other and engaged in a physical altercation in the presence of Kaitlyn. In September 2010, Mother was arrested for failure to protect after police investigating the home found a dead mouse, animal feces, and rotten food.

A voluntary family maintenance plan was signed by the parents in December 2010, but neither parent complied with the plan. Both failed to attend agreed-upon treatment and classes, and both disregarded a restraining order whereby Mother was not to have contact with Kaitlyn from 7:00 p.m. to 7:00 a.m. daily. Kaitlyn had been forced to repeat first grade due to poor attendance. When questioned, both parents blamed Kaitlyn for her school-related problems, stating that she did not respond to their prompting in the morning.

On February 8, 2011, Kaitlyn was detained and placed in DCFS custody. She was soon after placed with a nonrelated extended family member, Gina C. A subsequent

---

[1] Unless otherwise noted, all further statutory references are to the Welfare and Institutions Code.

report noted that Kaitlyn was a special education student who was shy and reserved and presented a flat affect with no emotion. Mother was regularly visiting Kaitlyn at Gina C.'s home and the monitored visitations were going well.

In March 2011, the dependency court ordered that mother participate in reunification services, including parenting, domestic violence, and alcohol counseling, with random testing. Monitored visitation was to be allowed three times a week.

A September 2011 status review report found that Mother was not in compliance with her domestic violence counseling or parenting education requirements. Mother had been enrolled in an outpatient substance abuse program, which included a domestic violence component, but she was terminated from the program in April 2011 due to a lack of attendance and participation. She tested positive for methamphetamine once during the program. Furthermore, from March 2011 to August 2011, Mother was scheduled to test for DCFS on 12 occasions. She failed to appear for testing eight times, was unable to provide a urine sample once, tested negative two times, and tested positive for alcohol once.

The September report also noted that Mother had participated in weekly monitored visits. The visitations were initially scheduled to occur at Gina C.'s home, but Gina C. reported several incidents where Mother was hostile and argumentative, so monitored visits were moved to the DCFS office. In visits at the office, Mother made significant efforts to act appropriately, and she engaged in age-appropriate activities with Kaitlyn. Kaitlyn responded well to the visits and became upset when scheduling conflicts prevented them from happening.

At the September 2011 hearing, the dependency court ordered DCFS to assess the suitability of the paternal grandparents, who lived in Washington, for placement. The grandparents stated they would be willing to provide guardianship for Kaitlyn, and Kaitlyn stated that she would like to live with her grandparents if she was unable to live with her parents.

At a continued hearing in November 2011, DCFS reported that Mother had missed two random drug tests. The court found that Mother was in partial compliance with the case plan and ordered that reunification services continue.

The paternal grandparents requested the opportunity to host Kaitlyn at their home in Washington over the 2011 Christmas break. A home inspection was completed, and the home was found to be appropriate and able to accommodate Kaitlyn. The dependency court granted the request.

A May 2012 status review report stated that Mother had been arrested and incarcerated in January 2012 for accessory to murder; her boyfriend at the time had also been arrested for accessory to murder. Mother posted bail in May 2012. Mother was not in compliance with her reunification services programs, though she had participated in domestic violence counseling, parenting education, and alcohol treatment while in jail. She had continued to participate in monitored visitation with Kaitlyn, seeing her approximately every other week before her arrest, and seeing her twice in jail after her arrest. Kaitlyn reported that she felt comfortable and enjoyed the visits with Mother. Mother also wrote letters to Kaitlyn and talked to her on the phone.

Kaitlyn was functioning at grade level in school and no longer needed special education. She continued to live with Gina C., but was having difficulty with Gina C.'s own daughter. Gina C. stated that she did not wish to act as permanent caretaker for Kaitlyn. Kaitlyn's paternal grandparents, however, indicated that they were willing to adopt Kaitlyn.

In June 2012, Gina C. informed DCFS that she was willing to continue caring for Kaitlyn only if there were no appropriate relatives for placement. Later that month, the home study of the paternal grandparents was approved. Kaitlyn stated, however, that she did not want to live in Washington, where her paternal grandparents lived, because she wanted to remain in California in hopes that she could return home to live with Mother or Father. DCFS determined that it was in Kaitlyn's best interest to be placed with her grandparents, as they were prepared to adopt her, and her placement with Gina was tenuous. In July 2012, the dependency court terminated reunification services and set a

4

section 366.26 hearing. It also ordered that Kaitlyn be placed with her grandparents in Washington.

An October 2012 DCFS report stated that Kaitlyn was placed in her paternal grandparents' home in July 2012 and had adjusted well to her new family and new environment. The grandparents had been a part of Kaitlyn's life since she was born. She enjoyed living with them and said she wanted to be adopted by them, though she continued to speak to Mother by telephone approximately three times a week. The grandparents said that they were committed to letting Kaitlyn maintain a relationship with Mother, as long as it was in Kaitlyn's best interest.

The contested section 366.26 hearing was set for December 10, 2012. That day, prior to the hearing, Mother filed a section 388 petition, asking the court to either continue reunification services or order a permanent plan of legal guardianship instead of adoption. Mother contended that she had turned her life around and gotten serious about her sobriety. She attached a letter from a residential facility for homeless, addicted women, indicating that she had been enrolled since September 13, 2012, and was actively participating in various classes and counseling and randomly testing negative for drugs and alcohol. She also attached a log of phone calls with Kaitlyn from September 16, 2012, to December 10, 2012, showing that she talked to Kaitlyn 11 times in the latter half of September, 16 times in October, 21 times in November, and seven times in the first part of December. The dependency court denied Mother's section 388 request without a hearing, noting that Mother had been given many months of family reunification services, and that "changing circumstances at the 11th hour" were insufficient to change the previous order.

In connection with the section 366.26 hearing, Kaitlyn testified by telephone. She stated that she spoke to Mother nearly every night about her day, about how she was doing, and about problems she had. Kaitlyn understood the meaning of adoption. She said that she wanted Mother to remain her "mommy" and her grandmother to remain her "grandma," and said that she wanted to be with Mother.

5

Mother testified next. She said that she and Kaitlyn would talk about school, friends, homework, gymnastics, Girl Scouts, and friends. Mother testified that Kaitlyn was her "life." Mother believed that Kaitlyn could be emotionally damaged if she were adopted.

Kaitlyn's attorney recommended that the court decline to terminate parental rights and instead order a permanent plan of legal guardianship. Mother's attorney also argued that parental rights should not be terminated and likewise requested that the court order a legal guardianship.

After hearing argument, the trial court terminated Mother's parental rights. The court found that the evidence showed nothing more than a "friendly, loving relationship" between Kaitlyn and Mother, and found that the evidence did not show the "longevity" or "consistency" of a parent-child relationship.

Mother timely appealed.

## DISCUSSION

### I. Denial of Section 388 Petition

Under section 388, the dependency court has discretion to modify a previously made order if circumstances have changed such that modification would be in the child's best interests. (*In re Kimberly F.* (1997) 56 Cal.App.4th 519, 526-527 & fn. 5.) This is a two-part requirement. "The parent must demonstrate (1) a genuine change of circumstances or new evidence, and that (2) revoking the previous order would be in the best interests of the children." (*In re Anthony W.* (2001) 87 Cal.App.4th 246, 250.) The parent seeking the modification bears the burden of making both showings. (*In re Casey D.* (1999) 70 Cal.App.4th 38, 47.)

"If it appears that the best interests of the child may be promoted by the proposed change of order, . . . the court shall order that a hearing be held and shall give prior notice . . . ." (§ 388, subd. (d).) "Section 388 thus gives the court two choices: (1) summarily deny the petition or (2) hold a hearing." (*In re Lesly G.* (2008) 162 Cal.App.4th 904, 912.) To compel a hearing, the petitioner must make a "prima facie" showing of "facts which will sustain a favorable decision if the evidence submitted in support of the

6

allegations by the petitioner is credited." (*In re Edward H.* (1996) 43 Cal.App.4th 584, 593.) The trial court may deny a section 388 petition ex parte if the petition "fails to state a change of circumstance or new evidence that may require a change of order . . . or, that the requested modification would promote the best interest of the child." (Cal. Rules of Court, rule 5.570(d)(1).)

Summary denial of a section 388 petition is reviewed for an abuse of discretion. (*In re Angel B.* (2002) 97 Cal.App.4th 454, 460.) "['] "The appropriate test for abuse of discretion is whether the trial court exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court.""" (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.) "The denial of a section 388 motion rarely merits reversal as an abuse of discretion." (*In re Amber M.* (2002) 103 Cal.App.4th 681, 685-686.)

We find that the dependency court did not abuse its discretion in denying Mother's section 388 petition without a hearing. Relying on *In re Angel B.*, *supra*, 97 Cal.App.4th 454, 461, Mother argues that she presented evidence that a hearing on her section 388 petition would promote the best interests of Kaitlyn, and the trial court therefore erred by denying the section 388 petition ex parte. We disagree. *In re Angel B.* involved the summary denial of a section 388 petition on facts similar to those presented here. In *In re Angel B.* the mother presented evidence that she had entered a residential drug rehabilitation program, had consistently tested negative for drugs and alcohol while in the program, had completed parenting classes and other classes, was participating in counseling, and had consistently visited with her child. Nevertheless, the Court of Appeal found that the trial court did not abuse its discretion by denying the petition without a hearing, noting the lack of evidence that the mother was ready to assume custody or provide suitable care or housing for the child, and the brief duration of the mother's sobriety compared to many years of addiction. (*Id.* at p. 463.)

Here, Mother's active participation in the residential facility for homeless, addicted women and her apparent desire to refrain from using alcohol or drugs were commendable. But these efforts came months after reunification services had been

7

terminated, when "the focus of the dependency proceedings had shifted from reunification to the child's need for a stable and permanent home." (*In re Casey D.*, *supra*, 70 Cal.App.4th at p. 48.) Although Mother appeared to be doing very well in her inpatient program, this brief period (of approximately three months) followed an extended period of extreme turbulence not conducive to the care of a child. During the reunification services period, Mother missed a great number of drug/alcohol tests, and tested positive for methamphetamine and alcohol. Her attendance at the various court-ordered programs was erratic, and she was arrested. Given Mother's history, the dependency court did not err in finding that several months in an inpatient program were insufficient to support a change in circumstances. (See *In re Mary G.* (2007) 151 Cal.App.4th 184, 205-206 [finding a failure to show changed circumstances; appellant's three-month sobriety following years of drug abuse was "not particularly compelling"].)

As stated in *In re Debra M*. (1987) 189 Cal.App.3d 1032, 1038, "The reality is that childhood is brief; it does not wait while a parent rehabilitates himself or herself. The nurturing required must be given by someone, at the time the child needs it, not when the parent is ready to give it." Mother was granted a year and a half of reunification services after she failed to abide by a voluntary family maintenance plan. She did not take advantage of this opportunity. As of December 2012, she finally appeared to be making efforts to improve on the conditions that led to the initiation of the dependency proceedings, but she never demonstrated an ability to care for Kaitlyn. "A petition which alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent, who has repeatedly failed to reunify with the child, might be able to reunify at some future point, does not promote stability for the child or the child's best interests." (*In re Casey D.*, *supra*, 70 Cal.App.4th at p. 47.) Thus, the dependency court did not abuse its discretion by summarily denying Mother's section 388 petition.

## II. <u>Termination of Parental Rights</u>

On appeal of an order terminating parental rights, we determine if there is any substantial evidence to support the conclusions of the dependency court. All conflicts are

resolved in favor of the prevailing party and all legitimate inferences are drawn to uphold the lower court's ruling. (*In re Josue G.* (2003) 106 Cal.App.4th 725, 732; *In re Brison C.* (2000) 81 Cal.App.4th 1373, 1378-1379.) We cannot reweigh the evidence or substitute our judgment for that of the trial court. (*In re Jamie R.* (2001) 90 Cal.App.4th 766, 774.)

At the selection and implementation hearing under section 366.26, subject to certain exceptions, the court must select adoption as the permanent plan and terminate parental rights if it finds that the child is likely to be adopted. (§ 366.26, subd. (c)(1); *In re Celine R.* (2003) 31 Cal.4th 45, 49; *In re Jamie R.*, *supra*, 90 Cal.App.4th at p. 773.) Adoption, when possible, is the permanent plan preferred by the Legislature. (*In re Derek W.* (1999) 73 Cal.App.4th 823, 826; *In re Ronell A.* (1995) 44 Cal.App.4th 1352, 1368.)

Mother contends that the dependency court erred because it did not rule in her favor pursuant to the "beneficial relationship exception" found at section 366.26, subdivision (c)(1)(B)(i), which applies when "[t]he parents have maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." Mother bears the burden of showing that this statutory exception applies, and that termination would be detrimental to the child. (*In re Derek W.*, *supra*, 73 Cal.App.4th at p. 826; *In re Melvin A.* (2000) 82 Cal.App.4th 1243, 1252.) A parent who wishes to invoke the beneficial relationship exception must show that "the relationship promotes the well-being of the child to such a degree as to outweigh the well-being the child would gain in a permanent home with new, adoptive parents. In other words, the court balances the strength and quality of the natural parent/child relationship in a tenuous placement against the security and the sense of belonging a new family would confer. If severing the natural parent/child relationship would deprive the child of a substantial, positive emotional attachment such that the child would be greatly harmed, the preference for adoption is overcome and the natural parent's rights are not terminated." (*In re Autumn H.* (1994) 27 Cal.App.4th 567, 575.)

9

The dependency court found that Mother's visitation was not consistent, a finding that is supported by substantial evidence. Although Mother maintained consistent contact by telephone with Kaitlyn, especially in the months directly preceding the contested section 366.26 hearing, actual visitation was inconsistent. This inconsistency was in large part due to Mother's failure to engage in reunification services. Had Mother actively participated in reunification services, she likely would have been able to have more regular visitation with Kaitlyn and been granted unmonitored visits. The beneficial relationship exception is not a means for a parent to avoid the consequences of having failed to reunify. (See *In re Jasmine D.* (2000) 78 Cal.App.4th 1339, 1348.)

Furthermore, the court's finding that Mother and Kaitlyn had a "friendly, loving relationship" but not a "parent-child relationship" was also supported by substantial evidence. Mother did not demonstrate the ability to provide Kaitlyn with the security and care necessary for Kaitlyn to develop in a positive way. When Kaitlyn was removed from Mother's custody, she lived in a house that had been without electricity, gas, and food; she was in the middle of repeating first grade; she had a continuing poor record of attendance at school; she was receiving special education; and she was a candidate for psychological counseling. By the time of the section 366.26 hearing, her grades and attendance had improved tremendously, she no longer needed special education or counseling, and she was in a loving and comfortable home. Kaitlyn clearly benefited from living with the grandparents. Mother did not provide evidence that her relationship with Kaitlyn promoted Kaitlyn's well-being to such a degree as to outweigh the well-being that Kaitlyn would experience by being adopted by her grandparents.

It is clear that Mother loves Kaitlyn, and that Kaitlyn loves Mother. But sufficient evidence supported the conclusion that termination of parental rights was proper. "DCFS is *not* required to produce evidence demonstrating that a minor would *not* benefit from continued parental contact. [Citation.] [¶] To overcome the preference for adoption and avoid termination of the natural parent's rights, the parent must show that severing the natural parent-child relationship would deprive the child of a *substantial*, positive emotional attachment such that the child would be *greatly* harmed. [Citations.] A

10

biological parent who has failed to reunify with an adoptable child may not derail an adoption merely by showing the child would derive *some* benefit from continuing a relationship maintained during periods of visitation with the parent. [Citation.] A child who has been adjudged a dependent of the juvenile court should not be deprived of an adoptive parent when the natural parent has maintained a relationship that may be beneficial to some degree, but that does not meet the child's need for a parent." (*In re Angel B.*, *supra*, 97 Cal.App.4th at p. 466, original italics.) Mother did not show that she met Kaitlyn's need for a parent, and termination of parental rights was therefore warranted.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.

BOREN, P.J.

We concur:

CHAVEZ, J.

FERNS, J.*

_____

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11