Filed 8/25/20  Merrill v. Party City Corp. CA1/3
Reposted to provide correct version
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| PATCHEREE MERRILL et al.,<br><br>    Plaintiffs and Appellants,<br><br>v.<br><br>PARTY CITY CORPORATION,<br><br>    Defendant and Respondent. | A152838<br><br>(City & County of San Francisco Super. Ct. No. CGC-14-538972) |

A group of former store managers who worked for defendant Party City Corporation (Party City) challenge a jury verdict finding they were exempt from overtime compensation requirements and rejecting their wage claims.  On appeal, the employees argue the trial court erred when it granted a motion to amend pleadings during trial and made several incorrect evidentiary rulings.  They also argue instructional and jury verdict sheet error, challenge the sufficiency of the evidence, and that the trial court erred when it admitted certain expert testimony.  We agree that Party City's expert was improperly permitted to testify to the contents of case-specific hearsay, but the error was harmless. We reject all of the plaintiffs remaining contentions and affirm the judgment.

1

## FACTUAL AND PROCEDURAL BACKGROUND

Party City owns and operates party supply stores throughout California. Patcheree Merrill, John Fitch, Brad King, Steve Fellin, Lori Turner, Luis Venegas, and Glenn Collins (plaintiffs) were store managers between 2012 and 2014. As such, they were responsible for managing their entire store, paid an annual salary between $58,000 and $82,000, and expected to work at least 50 hours each week.[1]

Weekly labor budgets for each store were prepared by Party City's corporate headquarters according to that store's sales. Once managers received their allocated payroll hours, they created weekly work schedules for their employees. Additional payroll hours could be requested if needed to complete tasks in the store. Managers hired, trained, supervised, and assigned tasks to employees, set their pay and evaluated their performance. Managers generally hired between 9 to 15 employees during the year, and additional temporary seasonal employees during the six-week Halloween season, the busiest time of year. Most employees were part-time and paid minimum wage. During Halloween, managers spent a significant amount of time training, directing, and organizing the seasonal employees and the entire store, in addition to addressing customer service issues.

Managers also had inventory responsibilities that entailed reviewing sales data to identify strategic opportunities, identifying loss prevention issues resulting from theft or damaged inventory, tracking and logging merchandise deliveries, adjusting prices for damaged or low-demand

---

[1] While this case was being briefed, plaintiffs filed a request for judicial notice of U.S. Department of Labor inflation data, and we deferred a ruling until the merits of the appeal. (See *People v. Preslie* (1977) 70 Cal.App.3d 486, 493–494.) We now deny the request because plaintiffs did not present the document in the trial court and it is not relevant to this appeal. (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 748, fn. 6.)

products, and controlling product displays through a process called "lows and outs." Party City policy prescribed "lows and outs" as a managerial task because it was the means used to ensure accurate inventory. Managers were required to walk through stores to identify whether stock was low or depleted. Managers would scan products on display using an inventory scanning gun connected to a computer network in order to identify the available inventory within a store, locate products in incorrect areas, and replenish displays. The complete process could take between six to ten hours, but managers often delegated the tasks of locating and replacing missing items from displays to hourly employees.

Managers were also responsible for building merchandise displays and making quick transitions of seasonal inventory. This required them to audit seasonal merchandise on hand, identify missing items, pack and store merchandise, and install fixtures and displays for new seasonal products. Although managers also performed other tasks as needed, such as working customer checkout, unloading, recording and storing incoming merchandise, blowing up balloons, cleaning, and setting up displays, they could delegate such tasks to other employees.

In 2014, plaintiffs, including Manuel Pamintuan,[2] filed a complaint against Party City for, among other things,[3] overtime compensation accrued between January 2012 to May 3, 2014. The complaint alleged they regularly were required to work in excess of 8 hours per day and in excess of 40 hours

---

[2] Manuel Pamintuan was the sole plaintiff who prevailed at trial and does not appeal the verdict.

[3] Plaintiffs also claimed statutory penalties for inaccurate wage statements, unfair business practices under Business and Professions Code section 17200 et. seq, and civil penalties under the Private Attorneys General Act of 2004, Labor Code section 2698 et. seq.

per week, and they did not fall within any exemption from the right to receive overtime compensation. During a ten-day jury trial, plaintiffs testified that the majority of their time was spent performing non-managerial routine and ordinary tasks: Venegas: 85%; Fitch: 80-85%; King: 80%; Fellin: 75%; Turner: 80%; Collins: 80%; Merrill: 80-90%. Many plaintiffs also testified that Party City did not allocate sufficient payroll hours that would allow them to hire hourly employees to complete all the necessary work. So, they had to complete the work themselves.

Party City presented testimony of other senior and general managers regarding the company's expectations of its managers, the sufficiency of the stores' labor budgets for hourly employees, and observations disputing the plaintiffs' testimony of how much time they spent performing routine non-managerial tasks. Robert Crandall testified as Party City's expert on retail management and labor economics. Crandall identified the duties and expectations for managers and, based upon his review of Party City electronic employee time-keeping data and customer transactions from the plaintiffs' stores he contradicted plaintiffs' testimony that they were occupied throughout the day and lacked adequate hourly employee assistance.

The jury found Pamintuan was not exempt from the right to overtime compensation and he was awarded damages and attorney fees. The jury, however, returned verdicts in favor of Party City on the remaining plaintiffs' claims. This timely appeal followed.

## DISCUSSION

An employee must be compensated at the overtime rate of at least one and one-half times their regular pay for work that exceeds eight hours per day or 40 hours per week, unless the employee is properly classified as exempt. (Lab. Code, § 510, subd. (a).) "Executive employees" are exempt if

4

"primarily engaged in the duties that meet the test of the exemption, customarily and regularly exercises discretion and independent judgment in performing those duties, and earns [a specified minimum salary]." (Lab. Code, § 515, subd. (a).) But exemptions are narrowly construed and must be proved by the employer. (See *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 794–795 (*Ramirez*).)

Under the Industrial Welfare Commission wage order No. 7-2001 governing retail industry workers, the executive exemption applies to any employee who meets all six of the following elements: "(a) Whose duties and responsibilities involve the management of the enterprise in which he/she is employed . . ., and [¶] (b) Who customarily and regularly directs the work of two or more other employees therein; and [¶] (c) Who has authority to hire or fire other employees or whose suggestions and recommendations as to hiring or firing and as to the advancement and promotion . . . will be given particular weight; and [¶] (d) Who customarily and regularly exercises discretion and independent judgment; and [¶] (e) Who is primarily engaged in duties which meet the test of the exemption. . . . [¶] (f) Such an employee must also earn a monthly salary equivalent to no less than two (2) times the state minimum wage for full-time employment." (Cal. Code Regs., tit. 8, § 11070, subd. 1(A)(1).)

With this legal framework, we discuss plaintiffs' arguments.

## I.  MOTION TO AMEND ANSWER

Plaintiffs contend the trial court abused its discretion when it allowed Party City to amend its answer and plead this "executive exemption" as

affirmative defense a few days before trial.[4]  This argument fails because plaintiffs have not shown they were prejudiced by the amendment.

The court's ruling was well within its broad discretion to allow amendments to pleadings.  (Code Civ. Proc., §§ 473, subd. (a)(1); 576 [trial courts may allow a party to amend any pleading "at any time before or after commencement of trial" and "on such terms as may be proper"]; *Branick v. Downey Savings & Loan Assn.* (2006) 39 Cal.4th 235, 242 [motions to amend reviewed for abuse of discretion].)  There is a "strong policy in favor of liberal allowance of amendments," even on the eve of trial and where prejudice is lacking, such as when issues related to the proposed amendment have been explored in discovery.  (*Mesler v. Bragg Management Co.* (1985) 39 Cal.3d 290, 296-297.)

Like the trial court, we see no surprise arising from Party City's requested amendment.  Plaintiffs' complaint alleged they primarily engaged in duties that did not meet the test for any exemption to the right to receive overtime.  Pre-trial depositions and discovery requests examined facts related to plaintiffs' routine, non-exempt tasks and Party City's decision to reclassify store managers as nonexempt.  Even before Party City filed its motion, plaintiffs anticipated this defense and filed a list of potential witnesses to testify about the realistic requirements of the manager position should the trial court later allow Party City to assert exemption defenses.  Plaintiffs were not deprived of their ability to present such additional witnesses to rebut potential exemption evidence, even though Party City's request for an

---

[4] We reject plaintiffs' argument that Party City's notice of its motion to amend was deficient under Code of Civil Procedure section 1005.  Plaintiffs failed to raise this issue in the trial court, and have forfeited the right to raise it now.  (See *City of San Diego v. D.R. Horton San Diego Holding Co., Inc.* (2005) 126 Cal.App.4th 668, 685 ["Contentions or theories raised for the first time on appeal are not entitled to consideration"].)

amendment was a few days before trial.  (See *Garcia v. Roberts* (2009) 173 Cal.App.4th 900, 913.)

## II.    JURY INSTRUCTIONS

Plaintiffs next challenge the trial court's jury instructions on several grounds, including that it improperly denied their requests to supplement or modify Judicial Council of California Civil Jury Instructions (CACI) Nos. 2720, and 2702, and rejected special instructions on the executive exemption.  There was no error in the instructions as given that prejudiced the plaintiffs or would warrant reversal.

The propriety of jury instructions is reviewed de novo.  (*Mize-Kurzman v. Marin Community College Dist.* (2012) 202 Cal.App.4th 832, 845.)  Proving reversible error first requires establishing the proposed, but rejected, jury instruction was proper.  (*See Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 685 (*Bullock*).)  "A party is entitled upon request to correct, nonargumentative instructions on every theory of the case advanced by him which is supported by substantial evidence."  (*Soule v. General Motors Corp.* (1994) 8 Cal.4th 548, 572 (*Soule*).)  But courts may properly refuse to give instructions that incorrectly state the law, are misleading, or "unduly overemphasize issues, theories or defenses either by repetition or singling them out or making them unduly prominent although the instruction may be a legal proposition."  (*Fibreboard Paper Prods. Corp. v. East Bay Union of Machinists* (1964) 227 Cal.App.2d 675, 718; *Caldera v. Department of Corrections & Rehabilitation* (2018) 25 Cal.App.5th 31, 44.)

An instructional error is not grounds for reversal unless the error caused actual prejudice, requiring an evaluation of "(1) the state of the evidence, (2) the effect of other instructions, (3) the effect of counsel's

7

arguments, and (4) any indications by the jury itself that it was misled."
(*Soule*, *supra*, 8 Cal.4th at pp. 580-581.)

We address each of the plaintiffs' claims of instructional error in turn.

**A. CACI 2720**

The trial court instructed the jury with CACI 2720 in order for them to assess the executive exemption affirmative defense for nonpayment of overtime compensation. The relevant portion of that instruction reads, "[a] Plaintiff is exempt from overtime pay requirements as an executive if Party City Corporation proves all of the following: [¶] 1. The Plaintiff's [sic] duties and responsibilities involve management of Party City Corporation's business or of a customarily recognized department or subdivision of the business;[¶] . . . [¶] 4. The Plaintiff customarily and regularly exercises discretion and independent judgment; [¶] 5. The Plaintiff performs executive duties more than half of the time."

Plaintiffs fault the trial court's refusal to modify CACI No. 2720 to incorporate two of their proffered special instructions.

***1. Special Instruction, Plainly and Unmistakably***

First, plaintiffs argue that CACI No. 2720 as given failed to incorporate the standard for the overtime compensation exemptions that is stated in the caselaw. Namely that in order to conclude the plaintiffs are exempt from over time protections the jury must find "that the evidence plainly and unmistakably satisfies every requirement for the exemption to apply." (*Peabody v. Time Warner Cable, Inc.* (2014) 59 Cal.4th 662, 667.) We are not persuaded.

The "mere fact that language in a proposed jury instruction comes from case authority does not qualify it as a proper instruction." (*Morales v. 22nd Dist. Agricultural Assn.* (2016) 1 Cal.App.5th 504, 526 (*Morales*).) In

8

*Morales*, the court rejected an instruction requiring the jury to find the employee "is *plainly and unmistakably within the terms and spirit*" of the exemption after finding the characterization was argument that was inappropriate for jury instructions. (*Id.* at p. 526 [addressing the recreational exemption to minimum wage and maximum hour requirements].) Plaintiffs' proposed instruction—nearly identical to the proposed instruction in *Morales*—does not warrant a different result here.

The trial court properly instructed the jury that Party City had the burden of demonstrating facts related to the executive exemption by a preponderance of the evidence. Altering CACI No. 2720 to require the evidence "plainly and unmistakably" satisfy every exemption element correlates to a higher burden of proof. (*Morales*, *supra*, 1 Cal.App.5th at pp. 517-518 [refusing to transform the phrase "plainly and unmistakably" into a new standard of proof].) While plaintiffs disclaim any intention to alter Party City's burden of proof, the trial court considered the proposed instruction too confusing and properly rejected the additional language. (See Cal. Rules of Ct., Rule 2.1050, subd. (e) [recommending judges use Judicial Council instructions unless a different instruction "would more accurately state the law and be understood by jurors"].)

### 2. *Special Instruction, Workweek by Workweek*

Second, plaintiffs argue the trial court erred when it rejected their proposed instruction and modified verdict for determining whether plaintiffs were primarily engaged in executive duties. Under their proposal, Party City would be required to prove each plaintiff was exempt during each workweek for which they sought overtime compensation. The proposed special verdict sheet similarly asked: "Did Defendant, Party City, prove that Plaintiff, [name,] spent more than 50% of his time each and every work week

9

performing exempt tasks as defined by the Court's Instructions?" These modifications were not required.

Employees may be "exempt" if they are "primarily engaged in duties which meet the test of the exemption." (Cal. Code Regs. tit. 8, §§ 11070, subd. 1(A)(1)(e); 2(K).) This is a quantitative assessment that considers whether they spent more than 51% of their time performing executive tasks. (See *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 801.) Determining exempt status thus requires reviewing the type of work an employee actually performs "during the course of the workweek" and the time spent on that work. (Cal. Code Regs. tit. 8, § 11070, subd. 1(A)(1)(e).)

Plaintiffs are correct that the "significant period for determining exempt status is the work week" and that an employee's exempt status may vary on a weekly basis. (*Batze v. Safeway, Inc.* (2017) 10 Cal.App.5th 440, 478-479 (*Batze*).) But "this rule in no way suggests that the trier of fact may not make reasonable inferences about a party's activities in earlier and later periods," particularly where, as plaintiffs acknowledge, "there is nothing to suggest the employee's duties and responsibilities changed significantly." (*Id.* at p. 479.) Moreover, there is no requirement that the evidence contain week-by-week detail covering all periods of the plaintiffs' work. (*Id.* at pp. 478-479.) The trial court correctly remarked that under the regulations and *Batze*, it was proper "to consider a store's time records for one [appellant's] so-called typical day in determining [the] time the same person spent on other days in the same store." (*Id.* at pp. 462, 478; see also *Heyen v. Safeway, Inc.*, (2013) 216 Cal.App.4th 795, 808 [discussing jury instructions that did not include workweek-by-workweek reference].) For that reason, the trial court did not err by omitting the workweek reference from the jury instructions or the special verdict form, which simply replicated the instruction.

10

*Dunbar v. Albertson's, Inc.* (2006) 141 Cal.App.4th 1422, and *Marlo v. United Parcel Service, Inc.* (9th Cir. 2011) 639 F.3d 942, upon which plaintiffs rely, do not compel a different result. Both affirmed denial of class certification in overtime cases because whether employees engage in exempt tasks is a fact-specific inquiry that varies by store and by workweek and cannot be extrapolated to an entire class. (*Dunbar*, at pp. 1427-28, 1431; *Marlo*, at p. 948.) Neither case considered whether an employer may rely upon inferences in meeting its burden to demonstrate that an *individual* employee performed exempt work in a given workweek.

Even if we were to assume the trial court erred by refusing to modify CACI No. 2720, plaintiffs have not shown its refusal prejudicially affected the verdict. (*Soule, supra*, 8 Cal.4th at p. 580; *Taylor v. Nabors Drilling USA, LP* (2014) 222 Cal.App.4th 1228, 1244 ["[A] defective special verdict form is subject to harmless error analysis"].) Plaintiffs claim that without reference to each workweek, jurors were simply allowed to average the employee's work experience over their entire term of employment rather than focus on the weeks during which they were misclassified as exempt employees. However, plaintiffs fail to identify anything in the record to demonstrate that assessing each workweek would conflict with the jury's finding that employees spent most of their time on executive tasks.

## B. Exempt and Non-Exempt Tasks

Courts are advised to instruct juries with examples of "executive duty" to assist them in determining whether employees qualify for the executive exemption. (See CACI No. 2720 commentary; see *Safeway Wage & Hour Cases* (2019) 43 Cal.App.5th 665, 673.) Consistent with that guidance, the jury instructions included examples of exempt tasks, such as inventory management, hiring and interviewing, and directing the work of employees;

11

and nonexempt tasks, such as cashiering, stocking shelves, and cleaning. Plaintiffs claim the trial court erroneously removed the "lows and outs" process—scanning out-of-stock products and determining where and when they occur—from the list of nonexempt tasks, because it could have been performed by their subordinates. However, determining whether a task is exempt or nonexempt is not as straightforward as plaintiffs assert.

Exempt tasks are "directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions." (Cal. Code Regs. tit. 8, § 11070(1)(A)(1)(e).) As plaintiffs correctly observe, a task is not exempt simply because it is performed by a manager. (*Batze*, *supra*, 10 Cal.App.5th at p. 474.) Rather, the jury must "look to the supervisor's *reason or purpose* for undertaking the task. If a task is performed because it is 'helpful in supervising the employees or contribute[s] to the smooth functioning of the department for which [the supervisors] are responsible' [citation], the work is exempt; if not, it is nonexempt." (*Heyen v. Safeway Inc.* (2013) 216 Cal.App.4th 795, 826.) For that reason, *Batze* acknowledged that scanning bar codes for out-of-stock products is a task that *could have* been performed by hourly employees, but the task also served a managerial responsibility of determining "when and where out-of-stocks occur and minimizing them." (*Batze, supra*, 10 Cal.App.5th at p. 480.) Thus, it was appropriate for the trier of fact to decide whether that specific task was exempt or nonexempt. (*Ibid.*)

The jury instructions here hewed closely to this authority. (*Safeway Wage & Hour Cases*, *supra*, 43 Cal.App.5th at p. 683.) The court included examples of exempt and nonexempt tasks and expressly stated "[t]his list is a guide. It is not all inclusive." The jury was further instructed to consider whether the tasks were exempt or nonexempt based upon on the primary

purpose undertaken by the plaintiffs at that time. Given the ongoing disagreement between the parties about whether the "lows and outs" process was a nonexempt task as argued by the plaintiffs and disputed by Party City, the court properly allowed the jury to determine its nature. (See *Batze*, *supra*, 10 Cal.App.5th at p. 480.) There was no error in those instructions.

## C. Special Instruction, Effect Upon the Whole Business

Plaintiffs' next attempted to modify CACI No. 2720's fourth element which requires the jury to consider whether each plaintiff customarily and regularly exercises discretion and independent judgment. They proposed the following addition: "[t]he employee's discretionary actions may be directly related to merely a particular segment of the business, but still must have a substantial effect on the whole business." The trial court declined to instruct that an employee's discretionary actions "must have a substantial effect on the employer's whole business" because this final phrase misstated the law for the executive exemption, by instead incorporating a concept from the administrative exemption. The trial court ruling was correct.

Relying on *United Parcel Service Wage & Hour Cases* (2010) 190 Cal.App.4th 1001 (*UPS*), plaintiffs maintain their proposed instruction was proper because the administrative and executive exemptions are interpreted in the same manner. (*Id.* at pp. 1010, 1024, fn.11.) Their reliance is misplaced. Exempt executive employees have duties that involve "the management of the enterprise in which he/she is employed or of a customarily recognized department or subdivision." (Cal. Code Regs., tit. 8, § 11070, subd. 1(A)(1)(a).) Employees under administrative exemption have duties that involve "non-manual work directly related to management policies or general business operations of" the employer. (Cal. Code Regs., tit. 8, § 11070, subd. 1(A)(2)(a).)

13

Both the administrative and executive exemptions apply to employees who exercise "discretion and independent judgment." (Cal. Code Regs., tit. 8, § 11070, subd. 1(A)(1)(d); *id*. subd. 1(A)(2)(b).) Indeed, the *UPS* court interpreted *that phrase* in the same way under both exemptions as the "power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance" or consequence. (*United Parcel Service Wage & Hour Cases*, *supra*, 190 Cal.App.4th at p. 1024.) But its interpretation and analysis of the exemptions' similarity ended there. (See *id*. at pp. 1016-1018, 1028-1030 [analyzing whether plaintiff exercised discretion and judgment under executive exemption rules, separately from the administrative exemption rules].) *UPS* provides no basis to conclude that managerial responsibilities must have a substantial effect on an entire business. The administrative and executive exemptions each have different requirements, and the trial court did not err by rejecting plaintiffs' request.

**D. Labor Code section 515 instruction**

Plaintiffs claim the trial court improperly rejected their proposed instruction that nonexempt employees cannot agree to a salary that includes their overtime compensation. We disagree because any error in rejecting the instruction was invited by plaintiffs. (*In re Jamie R.* (2001) 90 Cal.App.4th 766, 772 [invited error doctrine "applies where a party, for tactical reasons, persuades the trial court to follow a particular procedure"].)

Plaintiffs' proposed instruction tracked Labor Code section 515 as follows: "Payment of a fixed salary to a nonexempt employee shall be deemed to provide compensation only for the employee's regular, nonovertime hours, notwithstanding any private agreement to the contrary." (See Lab. Code, § 515, subd. (d)(2).) Party City objected to this proposal on the basis that the

14

entire instruction was duplicative of CACI No. 2702 on the factual elements of nonpayment of overtime compensation which was to be read to the jury and which tracked Labor Code section 1194 governing overtime pay rates. (See CACI No. 2702 [employees are "entitled to be paid the legal overtime pay rate even if [they] agree[] to work for a lower rate"]; Lab. Code § 1194.) Plaintiffs suggested to the trial court that if the duplicative instructions on the legal requirements were harmful, it could delete the phrase "notwithstanding any private agreement to the contrary" from the instruction. They then urged the court to retain the remainder of proposed instructions to inform the jury that a salary does not cover overtime compensation. The trial court deleted the phrase and instructed the jury exactly as requested by plaintiffs.

Plaintiffs now complain that the prohibitions against modifying an employer's overtime compensation liability by private agreement in Labor Code sections 1194 and 515 were not duplicative, and the jury should have been instructed on that point. But plaintiffs acknowledged the language concerning private agreements was duplicative, and both recommended and agreed to its deletion from the instruction. They are precluded under the doctrine of invited error from challenging the instruction on appeal. (*In re Jamie R.*, *supra*, 90 Cal.App.4th at p. 772.)

Plaintiffs' argument also fails because they cannot demonstrate prejudice. Under CACI No. 2702 the jury was instructed "An employee is entitled to be paid the legal overtime pay rate even if he or she agrees to work for a lower rate." This instruction conveyed the gravamen of plaintiffs' instruction based on Labor Code section 515 that an employee is entitled to overtime compensation rates that cannot be modified by private agreement. The jury was also instructed that "Payment of a fixed salary to a nonexempt

15

employee shall be deemed to provide compensation *only* for the employee's regular, nonovertime hours." (Italics added.) (*Bullock*, *supra*, 159 Cal.App.4th at pp. 684-685 ["A court may refuse a proposed instruction if other instructions given adequately cover the legal point"].) Plaintiffs also repeatedly argued to the jury without objection that the law will not recognize any agreement or understanding to give up the right to overtime compensation. (*People v. Young* (2005) 34 Cal.4th 1149, 1202 [reviewing courts must consider counsel's arguments when assessing the probable impact of instructions on a jury].) Taken as a whole, there is no reasonable probability that a different outcome would have occurred if plaintiffs' proffered instruction had been given.

## III. EVIDENTIARY RULINGS

Plaintiffs argue the trial court erred and abused its discretion when it admitted expert testimony and excluded evidence that Party City reclassified its store managers as nonexempt employees eligible for overtime compensation in May 2014.[5] Rulings on the admissibility of evidence are reviewed for an abuse of discretion, but a trial court's ruling based on a conclusion of law is reviewed de novo. (*Lockheed Litigation Cases* (2004) 115 Cal.App.4th 558, 564.)

### A. Expert Testimony

In *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*), our Supreme Court held that expert witnesses may not relate as true case-specific facts

---

[5] Plaintiffs perfunctorily assert the trial court erred in permitting additional Party City store managers to testify, but we reject the argument as waived because they fail to provide any cogent analysis, citation, or relevant authority to support this claim. (*Associated Builders & Contractors, Inc. v. San Francisco Airports Com.* (1999) 21 Cal.4th 352, 366, fn. 2.)

asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception. (*Id.* at p. 686) Plaintiffs contend the trial court erred and violated the rule articulated in *Sanchez* when it allowed Party City's expert, Robert Crandall, to base his opinion on, and testify to the substance of, Party City's electronic time and cash register records and to express his opinion that the stores managed by plaintiffs were adequately staffed relative to customer flow.[6] On this point, we agree.

Contrary to Party City's assertion, plaintiffs did not forfeit their argument. Plaintiffs moved *in limine* to preclude both Crandall's opinion and his testimony on the contents of electronic data. Their motion was denied. During trial plaintiffs repeatedly objected to Crandall's testimony regarding the underlying data on the grounds of hearsay and lack of foundation under *Sanchez*, thus sufficiently alerting the trial court and Party City of the basis for their objections and preserving this issue for review. (*People v. Stamps* (2016) 3 Cal.App.5th 988, 993.)

1. *Case-Specific Hearsay*

Throughout Crandall's second day of testimony, he testified to lengthy case-specific data containing plaintiffs' time keeping and cash register transactions. The information he analyzed was compiled from Party City electronic cash register and employee time-keeping records from the stores managed by plaintiffs and supplied by non-testifying declarants. He testified to the exact number of transactions the plaintiffs' stores completed per hour

---

[6] Plaintiffs also argue that Crandall improperly conveyed the contents of declarations drafted by other Party City employees, but concede they failed to make a specific objection below. That argument is forfeited. (*P&D Consultants, Inc. v. City of Carlsbad* (2010) 190 Cal.App.4th 1332, 1344.)

17

and to the number of hours and employees who worked in their stores per week.  He then compared the data from plaintiffs' stores to other Party City stores in order to assess whether managers who purportedly spent more time on managerial tasks had more hourly employees or fewer customer transactions.  Based on this information, he directly contradicted plaintiffs' testimony that they are always busy with customer transactions, or that they were often working alone in their stores and thus required to complete non-managerial tasks.  Crandall acknowledged he lacked personal knowledge of these facts.  There was no foundation otherwise demonstrated for admissibility or consideration of the data as a business record.

This is exactly the sort of case-specific hearsay that cannot be conveyed to the jury.  (See *Sanchez, supra*, 63 Cal.4th at pp. 676-677, 686.)  Experts may rely on hearsay in forming their opinions and "may tell the jury in general terms that [they] did so." (*Sanchez, supra*, 63 Cal.4th at p. 685; Evid. Code, § 801, subd. (b))  But they cannot convey case-specific facts "relating to the particular events and participants alleged to have been involved in the case being tried" that are outside the expert's personal knowledge, do not fall under an exception to the hearsay rule, or are independently established by competent evidence.  (*Sanchez, supra*, 63 Cal.4th at pp. 676-677, 686.)

Crandall's personal knowledge of his *analysis* of these records does not change the fact that he lacked knowledge of their factual content or their means of production.  The data at issue here is not, as Party City claims, admissible as nonhearsay computerized data. *People v. Goldsmith* (2014) 59 Cal.4th 258, and *People v. Dawkins* (2014) 230 Cal.App.4th 991, upon which Party City relies, addressed computer printouts that reflect a computer's automatic internal operations.  (*Goldsmith, supra*, 59 Cal.4th at p. 271 [Automated traffic enforcement system record of photograph from traffic light

18

camera automatically and contemporaneously records images]; *Dawkins*, at p. 1003 [computer systems that automatically record data on government maintained computers are presumed accurate].)  As Crandall acknowledged, the data is not necessarily recorded automatically because it may be edited by store managers.  Thus, it is the " 'output of statements placed into the computer by out of court declarants,' " and it is hearsay.  (*People v. Hawkins* (2002) 98 Cal.App.4th 1428, 1449.)

Nor was this data admissible under the business record exception as argued by Party City in the trial court.  (See Evid. Code, § 1271, subds. (a)-(d) [business records are admissible as an exception to the hearsay rule if the writing "was made in the regular course of a business," made at or near the time of the event, a "custodian or other qualified witness testifies to its identity and the mode of its preparation" and "sources of information and method and time of preparation were such as to indicate its trustworthiness"].)  A statement by Party City's counsel at trial that the records are computerized in data or electronic form does not provide a foundation for their admissibility as business records. (Evid. Code, § 403, subd. (a); *Herrera v. Deutsche Bank National Trust Co.* (2011) 196 Cal.App.4th 1366, 1376-1377 [records did not qualify under the business records exception to hearsay where foundational elements such as how the documents were prepared under Evid. Code, § 1271, subd. (d) was lacking].)  Crandall admitted he lacked personal knowledge of whether the records were made at or near the time of the event recorded, and he did not know the custodian of the records or the method or time of preparation that would demonstrate trustworthiness.  (See Evid. Code, § 1271.)

Because these foundational facts were outside of Crandall's personal knowledge, and no other witness supplied them, no hearsay exception

applies. It was error to admit Crandall's testimony regarding the adequacy of employee staffing at the stores managed by plaintiffs that was based upon this data. (See *Sanchez, supra,* 63 Cal.4th at pp. 676-677, 686; *Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 770.)

### 2. *Harmless Error*

We will not set aside the judgment because in light of the entire record, it is not reasonably probable that plaintiffs would have a more favorable result had the trial court excluded this portion of Crandall's testimony. (*Osborn v. Irwin Memorial Blood Bank* (1992) 5 Cal.App.4th 234, 254 [standard for reversal due to the erroneous evidentiary ruling].) An error may be deemed harmless if improperly admitted evidence is " 'merely cumulative or corroborative of evidence properly in the record.' " (*Id.* at p. 255.) Extensive testimony from plaintiffs and Party City's district and general manager witnesses corroborated Crandall's testimony that plaintiffs' stores were adequately staffed, thus undermining their claims that they primarily performed non-managerial tasks due to inadequate labor budgeting.

First, not all of Crandall's testimony was improper under *Sanchez.* There is no reason to disregard Crandall's opinion that managers should reallocate employee labor to complete necessary, routine tasks relating to customer transactions, or that they should monitor and manage employee productivity and minimize their idle time. This testimony was not based upon inadmissible hearsay.

According to Crandall, supervision and maintaining store standards were important skills to allow managers to use their labor effectively. Crandall continued, testifying that managers often requested additional labor

assistance or performed non-managerial tasks because they ineffectively used their existing labor. For example, if employees were cross-trained to perform multiple tasks, rather than a single task, such as cashiering, managers could assign them to effectively perform varied tasks that were required in the stores. Additionally, the failure to manage employees' idle time had significant consequences that reduced the amount of actual work performed in the number of available labor hours. Crandall presented a hypothetical involving an idle rate of 10 percent, meaning there would be six minutes in every hour when an employee may simply be standing around. If five employees are idle 10 percent of the time, the store loses 30 minutes of labor in each hour. Over the course of one week, this would total approximately 35 hours of lost productivity. Thus, in Crandall's opinion, complaints about insufficient labor were generally the result of inadequate manager training or supervision of employees who then failed to properly accomplish their tasks. The complaints were not due to inadequate staffing.

Second, Party City witnesses testified to the adequacy of their labor budgets, first acknowledging that, like plaintiffs, they received approximately 300–350 scheduled hours each week, sometimes more. These managers testified that the hours were intended to be realistic for completing the same tasks as plaintiffs and their part-time associates, and they could always request additional hours if the scheduled hours were inadequate. For example, Piliki Gutierrez, a Party City general manager, testified that his allocation of 300- 360 labor hours each week was adequate for his store. Once when he asked, he was granted additional hours to facilitate an unscheduled shipment of products. Paul Conaty, another general manager, had an average weekly labor budget of 366 hours. He testified that with these hours, he spent minimal time on hourly tasks, such as cashiering, cleaning, or

21

blowing up balloons, and instead spent approximately 75% percent of his time on managerial tasks, such as hiring, training, coaching, writing schedules, and controlling inventory. Consistent with Crandall's testimony, district manager and Party City witness, Jim Haynie, noted that the productive use of allotted hours required a good plan that may include delegating difficult tasks to more experienced associates or having managers oversee whether assignments were being completed. According to Haynie, the store plaintiff Venegas managed often fell below expectations. Venegas should have reallocated labor if a project was failing behind, but he was not properly supervising his employees, planning, or communicating with them.

Other testimony corroborated that managers were expected to efficiently use the labor budget Party City provided each store. Plaintiffs King and Turner acknowledged that Party City allocated store managers more hours during busier times and would decrease the allocations in downtimes. Party City district manager, Mike Zamecnik, testified that when a general manager requested more hours, Zamecnik would ask why additional hours were needed, and would provide them so stores could complete certain tasks, such as display transitions, plans, or price changes. Patricia Murphy, another Party City general manager, testified that she would request more hours from her district manager when she felt there was a special project that needed to be completed. The process she articulated was consistent with testimony from plaintiffs and Zamecnik. She would ask the district manager for additional hours, specify the number of hours requested, convey the reason why the hours were needed, and identify the plan to use them.

Although Zamecnik acknowledged that he did not give general managers regular increases in labor and did not grant every request, he did

approve increased hours based on need. Plaintiff Glenn Collins' district manager, for instance, provided him with extra hours to finish certain tasks, even when Collins did not make any specific request. Haynie testified he provided extra labor hours to plaintiffs Venegas, King, and Turner upon request. Significantly, a number of plaintiffs, including Venegas, Fitch, and Collins testified that although they *could* ask for additional hours, they sometimes did not. For some, it was due to the assumption that sufficient hours were allotted to each store and they wanted to demonstrate they could use those hours efficiently. But asking for more hours could reduce their potential year-end bonuses. Fitch thought there was an incentive not to request or receive extra hours, because the more hours a manager had, the lower the store's profit. King also testified that exceeding the labor budget cut into a store's profitability and resulted in a lower bonus.

Third, plaintiffs further corroborated Crandall's testimony that they rarely worked in their stores alone. They acknowledged that staffing levels generally increased throughout the day or week to match the demands placed on store personnel. Venegas, Fitch, and King each had an additional employee to assist opening their stores in the morning, and three additional employees, including a cashier, in the store every day. Turner had approximately 11 employees, and at various times had another assistant manager. Venegas testified that there were four employees in his store in the late afternoon during the week, and additional employees on weekends. Fitch similarly acknowledged that to complete tasks, it was a matter of scheduling rather than adding extra hours. To that end, he scheduled additional managers or shift employees to work when there were more routine, non-managerial tasks to perform, such as unloading products from trucks or on busier customer days, such as a Saturday. Merrill scheduled

23

employees to overlap two hours, thus allowing continuity of store coverage. King testified that he had about 12 employees working for him during non-Halloween times of the year. He and one other person would open the store. One more employee would come in once opened, and there would be approximately three to four additional employees or more for the rest of the day because additional employees including a closing manager would come to close the store. Fellin had approximately 10-14 employees working with him, including a number of assistant managers who had keys to open the store, and he scheduled employees for specific times during the day to ensure store coverage, such as one additional employee for opening, one employee to stock products, one cashier, a mid-shift cashier, a closing stock person and two closing cashiers. Plaintiffs testified that closing recovery teams would stay for 30 minutes after closing to help clean the store.

Although the court erred when it admitted Crandall's testimony based upon case specific hearsay, the evidence as a whole corroborates Crandall's testimony that plaintiffs had sufficient hourly employee support, and were not required to primarily perform manual tasks.

## B. Reclassification Evidence

Plaintiffs next argue the court erroneously excluded Party City's decision to reclassify its managers to hourly non-exempt employees in 2013 as a remedial measure inadmissible under Evidence Code section 1151 and the exclusion was prejudicial.[7] Even if we agreed with this premise, the trial court properly excluded the evidence on the alternate ground that its

---

[7] Plaintiffs also argue for the first time in their reply brief, that the reclassification was admissible under section 1151 because it demonstrated the feasibility of classifying managers as nonexempt employees. This argument was neither raised in their opening brief or in the trial court, and is waived. (*Moore v. Shaw* (2004) 116 Cal.App.4th 182, 200, fn. 10 ["Ordinarily, an appellant's failure to raise an issue in its opening brief waives the issue on appeal"].)

probative value was substantially outweighed by danger of confusing the issues. (Evid. Code, § 352; see *People v. Carey* (2007) 41 Cal.4th 109, 128 [trial courts have broad discretion deciding whether the probability of substantial danger of prejudice substantially outweighs probative value].)

There is " '[n]o bright-line rule [for] classifying everyone with a particular job title as per se exempt or nonexempt.' " *Mies v. Sephora U.S.A., Inc.* (2015) 234 Cal.App.4th 967, 978.) The central inquiry depends on the work individual employees actually perform, not whether the employer designates the employees as exempt or nonexempt. (*Ibid.*) The court reasonably concluded that evidence of Party City's decision to reclassify managers as nonexempt employees would be more prejudicial than probative. That decision has little bearing on the tasks the plaintiffs actually performed and consequently whether they were misclassified during the relevant period of time. The court could reasonably conclude that inquiry into the factors that made Party City reclassify the managers could distract the jury from considering how these employees actually spent their time. There was no abuse of discretion in excluding this evidence.

## IV. Substantial Evidence Supports the Jury's Verdict

Finally, plaintiffs contend the evidence does not support the jury's verdict. When assessing a claim of insufficiency of the evidence supporting a jury verdict, we review the record to determine whether there is substantial evidence. (*Howard v. Owens Corning* (1999) 72 Cal.App.4th 621, 631.) "If this 'substantial' evidence is present, no matter how slight it may appear in comparison with the contradictory evidence, the judgment must be upheld." (*Ibid.*) All " 'conflicts in the evidence are resolved in favor of the prevailing party, and all reasonable inferences are drawn in a manner that upholds the

verdict.' " (*Homes v. Lerner (*1999) 74 Cal.App.4th 442, 445)  After conducting that review here, we affirm the verdicts.

### A. Primarily Engaged in Duties Which Meet the Test of the Exemption

Party City was required to show plaintiffs were "primarily engaged in duties which meet the test of the [executive] exemption," meaning they were engaged in executive duties for more than one-half of their work time. (Cal. Code Regs. tit. 8 §§ 11070, subd. 1(A)(1)(e); (2)(K); see also *Ramirez, supra*, 20 Cal.4th at p. 798, fn.4.)  Even though plaintiffs testified that they spent the vast majority, more than 80%, of their time performing non-executive tasks, Party City witnesses contested their testimony.  Bennin specifically contradicted Fellin's claim that he spent most of his time on non-exempt tasks, testifying that on the many occasions she observed him working, he delegated tasks and spent most of his time in the office.  On Crandall's first day of testimony, which plaintiffs do not challenge as inadmissible, he testified based on his experience and prior observation studies that people generally overstate the time they spend on manual tasks, such as stocking and cashiering.  The jury was authorized to believe the Party City witnesses and Crandall's testimony, and we cannot disturb its credibility determination on appeal. (See *Lenk v. Total-Western, Inc.* (2001) 89 Cal.App.4th 959, 968 [appellate deference to the trier of fact's credibility determinations].)

The jury was also properly instructed that it must consider Party City's realistic expectations of how plaintiffs were to spend their time and the realistic requirements of the job.  (See *Ramirez, supra*, 20 Cal.4th at p. 802.) Ample evidence supports the jury's finding on this point.

In addition to the adequacy of store staffing, Party City district managers testified that they conveyed their expectations of the tasks

expected of general managers. These included managers leading their hourly staff by teaching and training them to perform manual tasks. Admissible expert testimony established that while managers were responsible for all tasks within a store, managers were not required to perform all duties themselves. Instead, managers must allocate and schedule labor effectively or hire productive labor. Party City witnesses testified that if managers that were often performing manual tasks such as mopping floors, it indicated problems in how the store was managed and failure to focus on priorities.

A reasonable fact finder could conclude that Party City's realistic expectations and requirements for the job did not include performing manual tasks.

## B. Customarily and Regularly Exercised Discretion and Independent Judgment

On the second point, plaintiffs challenge the jury's finding that they regularly exercised discretion and independent judgment. Their only quarrel with this finding is there was insufficient evidence that plaintiffs' exercise of discretion and judgment had a *substantial effect on Party City's whole business*—plaintiffs' proffered addition to CACI 2720. As noted above, the jury was properly instructed without this requirement. There was no legal requirement for Party City to prove the plaintiffs' exercise of discretion affected its whole business in order to prove the executive exemption.

Sufficiency of the evidence must be reviewed "under the law stated in the instructions given, rather than under some other law on which the jury was not instructed." (*Bullock v. Philip Morris USA, Inc.* (2008) 159 Cal.App.4th 655, 674–75.)

Plaintiffs have not shown the jury's finding that plaintiffs exercised discretion and judgment was unsupported by substantial evidence.

27

## V.     CUMULATIVE ERROR

Lastly, plaintiffs contend cumulative errors in the trial court warrant reversal, because without them, it is reasonably probable that the outcome would have been more favorable to plaintiffs.  (*Victaulic Co. v. American Home Assurance Co.* (2018) 20 Cal. App.5th 948, 987−988.)  Here, there was one identified error, and it was not prejudicial.  The cumulative error doctrine does not apply.

## DISPOSITION

The judgment is affirmed.

_____
Siggins, P.J.

WE CONCUR:


_____
Petrou, J.


_____
Jackson, J.


*Merrill et al. v. Party City Corporation*  A152838